UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CR038 CDP |
| | ) | |
| FREDERICK J. KRENNING, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed a motion to suppress physical evidence, and an evidentiary hearing was held on April 28, 2010. Following the evidentiary hearing, the undersigned ordered a transcript of the proceeding, and the transcript was filed on May 5, 2010. The undersigned set a briefing schedule directing the Government to file a post-hearing brief no later than May 13, 2010 and the Defendant to file any response by May 18, 2010. On May 13, 2010, the Government filed a request for extension of time to file its brief, and the undersigned granted the Government's request, finding that in the interest of justice, the extension of time to May 18, 2010 should be granted. Thereafter, on May 20, 2010, the attorney for the Government indicated that no post-trial brief would be filed. Further, the Defendant filed no brief in this matter.

Therefore, based upon the evidence adduced at the hearing on the motion to suppress as well as a review of the written transcript of the proceedings, the undersigned makes the following findings of fact and conclusions of law:

## Findings of Fact

Michael Pratt is a detective with the St. Louis Metropolitan Police Department. On December 8, 2009, Det. Pratt and his partner Det. Winter came on duty at approximately 10 a.m. Shortly thereafter, they attended the roll call of officers at which they are briefed, among other things, about possible criminal activity in their area, which was the Second Police District in the City of St. Louis. At the roll call, Lt. Cole, their watch commander, told the officers assembled that on December 7, 2009, while he was off duty, he observed an incident at 4555 Ridgewood in the Second District. He stated that while he was driving his personal vehicle, he observed an individual take a gun from the back of a pickup truck and place it in his waistband. This weapon appeared to be a pistol. Lt. Cole went back by the vehicle and obtained the license number of the vehicle. He determined that the pickup truck was registered to Frederick Krenning. From a photograph that was obtained either by Cole or other officers, Cole determined that the person who he observed with the gun was, in fact, Frederick Krenning. It was also determined at that time that Frederick Krenning had been convicted of numerous felonies.

After obtaining this information at roll call, Det. Pratt and his partner decided to investigate the matter further. They drove to the area of 4500 Ridgewood in an attempt to find Krenning's vehicle and Krenning. They intended to interview Krenning to further investigate whether or not he was in possession of a firearm. As they were driving in this area, they observed a pickup truck that closely matched the description of Krenning's vehicle pass them, going in the opposite direction on Ridgewood. They obtained a partial license plate which matched Krenning's plate. They turned their vehicle around and attempted to follow this pickup truck, however, were not able to catch up

to the vehicle, and lost sight of it. They searched around the area for some time, but were not able to find the pickup truck.

After about a half an hour, they went to an apartment building at 3912 Jamieson, also in the Second District. They noted that Krenning's truck was registered at this location, and that Krenning apparently lived at the apartment building. They drove around in the area of the building, and eventually drove down the alley behind 3912 Jamieson. As they were driving south in the alley, they observed Krenning's truck coming north directly toward them. They observed Krenning's truck turn into the rear of 3912 Jamieson in front of them, and park in a parking area for the apartment building. Winter, who was driving the car, then pulled in behind and slightly to the south of the pickup truck. Although Pratt and Winter were in an unmarked vehicle, they wore blue windbreakers, that were clearly marked "Police" on them as well as vests marked "Police," and had their badges around their necks. Pratt got out of his vehicle, and walked around to the driver's side of the car. He recognized Krenning as the driver of the car, and Krenning and a passenger got out of their vehicles at about the same time that Winter and Pratt got out of their unmarked police vehicle. As Pratt came around to the driver's side of the vehicle, based on Krenning's actions, he believed that Krenning recognized him as a police officer before he was fully around the vehicle. When he came around the vehicle and Krenning was fully in his view, he observed that Krenning had his left hand in his left pants pocket moving it around. As he moved closer to Krenning, he saw Krenning remove his hand from his left pants pocket and observed, wedged between the third and fourth finger of Krennning's hand, a black and clear capsule which appeared to be filled with a powder. Based on Pratt's experience, he believed that the capsule contained heroin. As a detective, Pratt investigates drug cases, and previously observed heroin packaged in exactly this same manner. Krenning then quickly moved his

3

hand behind his back as if to conceal the capsule or to discard it. As he did this, Pratt grabbed his left hand and Krenning released the capsule. Because Pratt believed the capsule contained heroin, Pratt placed Krenning under arrest for possession of narcotics. He handcuffed Krenning, and patted down Krenning in an attempt to find weapons or other dangerous items. He did this both because he was under arrest, and because he had information that Krenning had, the day before, been in possession of a firearm. While doing this pat down, Pratt felt the handle of what he immediately believed to be a handgun in the Defendant's right waistband. He removed the weapon, and observed it to be a fully loaded .32 caliber revolver. He also placed Krenning under arrest for the offense of unlawful use of a weapon, and for being a felon in possession of a firearm. He advised Krenning of his rights, and Krenning made no statements.

## Conclusions of Law

A. The Arrest of the Defendant and the Search of his Person

Based on the above, the undersigned concludes that there was probable cause to arrest the Defendant and, therefore, the search of his person incident to that arrest was lawful.

Police officers may arrest a person without a warrant if they have probable cause to believe the person arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). The manner in which probable cause is determined is the same in both probable cause for arrest and probable cause for a search warrant. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1979). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context--not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, probable cause "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." 462 U.S. at 232. All that need be shown for probable cause to arrest is that a "fair probability" exists that a crime has been committed, and the defendant committed the crime. Illinois v. Gates, supra.

Based on the above law, the undersigned believes there was ample probable cause to arrest the Defendant for possession of narcotics. Det. Pratt observed the Defendant in possession of what he reasonably believed to be a capsule of heroin. He based this belief on the way that the capsule was packaged, as well as his prior experience with the packaging of heroin. It should also be noted that the Defendant was attempting to conceal this suspected heroin. Based on the above, the undersigned concludes that there was at least a "fair probability" that the Defendant was in possession of heroin and was committing a crime in the officer's presence. Therefore, the undersigned concludes there was probable cause to arrest the Defendant, and that he was therefore lawfully detained.

After a lawful arrest, officers may conduct a warrantless search of the person arrested and the area within the defendant's immediate control without any further probable cause. The validity of the search is bound only by the validity of the arrest. New York v. Belton, 453 U.S. 454 (1981). See also, Chimel v. California, 395 U.S. 752 (1979). Therefore, because the arrest of the Defendant was lawful, so to was the search of his person and the seizure of the weapon taken from him. The undersigned concludes that the weapon was within the Defendant's immediate control while in his

waistband, even though the Defendant was handcuffed. Therefore, the seizure of the firearm should not be suppressed.

## Conclusion

Therefore, the Defendant's motion to suppress evidence should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Evidence [Doc. #22] be **denied**.

Finally, the parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of May, 2010.